UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | August 14, 2008 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Denying Plaintiffs' Motion to Certify Class (Fld 5-2-08)

Plaintiffs Kristin Casarez ("Casarez") and Tyler Goodell ("Goodell") (collectively "Employees") seek class certification pursuant to Federal Rule of Civil Procedure 23. Defendant General Nutrition Centers, Inc. ("GNC") opposes the motion.

I.  Background

The Complaint alleges, <u>inter alia</u>, that GNC violated California Labor and Unfair Competition Laws by failing to provide meal and rest breaks and to pay overtime wages, wages due upon termination, and itemized wage statements. Cal. Labor Code §§ 203, 226, 512, 1198; Cal. Bus. & Prof. Code §§ 17000, 17002, 17200; 8 Cal. Code of Regs. § 11070.

The Employees request certification of a class defined as follows:

> All persons employed in positions designated by GNC as non-overtime exempt (hourly) positions on or after August 24, 2004 at GNC stores in the State of California.

II. Discussion

All class actions in federal court must meet the following four prerequisites for class certification:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-875 JVS (AGRx).                    Date  August 14, 2008

Title  Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, a plaintiff must comply with one of three sets of conditions set forth in Rule 23(b).  Here, the Employees argue that their class should be certified because it meets the requirements of Rule 23(b)(3), under which a class may be maintained where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.  (Opening Br. pp. 16-23.)

The decision to grant or deny class certification is within the trial court's discretion.  Yamamoto v. Omiya, 564 F.2d 1319, 1325 (9th Cir. 1977).  In doing so, a trial court is not permitted to make a preliminary inquiry into the merits. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78 (1974).  Instead, the Court is only required to form a reasonable judgment.  Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  In this regard, "[t]he court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations."  Id.  The Court may require the parties to provide additional material from which the Court may make an informed judgment as to each requirement of class certification.  Id.

Casarez and Goodell seek certification under Rule 23(b)(3).[1]  (Opening Br. p. 16 et. seq.)  "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975) (quoting Committee notes).  A class action may be certified where common questions of

---

[1] Because the Court finds the analysis under Rule 23(b)(3) dispositive, it does not address the prerequisites under Rule 23(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                              Date   August 14, 2008

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

law and fact predominate over questions affecting individual members and where a class action is superior to other means to adjudicate the controversy.

    A.    <u>Predominance</u>

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591 at 623 (1997). The Court must rest its examination on the legal or factual questions of the individual class members. <u>Hanlon</u>, 150 F.3d at 1022. "To determine whether common issues predominate, this court must first examine the substantive issues raised by [the Employees] and second inquire into the proof relevant to each issue." <u>Jiminez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 741, 251 (C.D. Cal. 2006) (citing <u>Simer v. Rios</u>, 661 F.2d 655, 672 (7th Cir. 1981)).

In this case, the Employees seek to recover unpaid overtime wages and wages in lieu of rest and meal breaks they did not receive. The Court addresses each of these claims separately.

        a)    <u>Off-the-clock Wages and Mileage Reimbursement</u>

The Employees seek to certify their "off-the-clock" claims for unpaid wages accrued during the time periods in which they made bank deposits at the end of the day and periods in which they were occupied by work-related telephone calls while off-duty. (Opening Br. p. 7.) They also seek reimbursement for mileage accumulated while driving deposits from a GNC store to a bank drop box. (<u>Id.</u>)

In order to establish liability on this claim, the Employees must prove that GNC knew or had reason to believe that they worked off the clock. <u>Morillion v. Royal Packing Co.</u>, 22 Cal. 4th 575, 585 (2000). Moreover, in order to show that the claim is appropriate for class treatment, the Employees must demonstrate that liability can be proved on a class wide basis by common methods. <u>See Jiminez</u>, 238 F.R.D. at 251.

GNC has a written policy expressly requiring all employees "regardless of position . . . to record his/her own actual hours worked." (Wuschel Decl. ¶ 17 & Ex. P.) The California court of appeal has determined that, given that fact, a claim regarding off-the-clock work was not "amenable to class treatment." <u>Brinker Restaurant Corp. v. Superior</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | August 14, 2008 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

Court, 2008 WL 2806613 at 24 (Cal. Ct. App. 2008). This is because "resolution of these claims would require individual inquiries in to whether any employee actually worked off the clock, whether managers had actual or constructive knowledge of such work and whether managers coerced or encouraged such work." Id. Indeed, Goodell testified at his deposition that he reported the time it took him to make the bank deposits "every time" he worked a shift of fewer than eight hours, and that he also reported it when he worked an eight hour shift. (Goodell Depo. pp. 16:22-17:16.) He testified that he was not reprimanded for reporting this time. (Id. p. 17:17-21.) This evidence exemplifies the individualized nature of the inquiry into the issues that form the basis for the Employees off-the-clock claims.

The claims for mileage reimbursement also require individualized fact-finding, including regarding whether or not a particular Employee incurred mileage expenses, and whether any expenses incurred were "necessary" and therefore eligible for reimbursement. (Opposition Br. pp. 21-22.)

The Employees do not address any of GNC's arguments against certification of either the off-the-clock or mileage reimbursement claims in their reply brief. (Reply Br. passim; Sur-reply Br. p. 14.) Nor did they address these claims at oral hearing.

In light of the predominance of individual issues necessary to establish liability for unpaid overtime wages and mileage reimbursement, the Court finds that these claims are not amenable to class treatment. Accordingly, the Court denies certification of these claims.

        b)    Rest Breaks

The California Code of Regulations provides that:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

8 Cal. Code Regs. § 11070 (12)(A).

The Labor Code further provides that, if an employer fails to provide a meal or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(a).

The California Supreme Court has not yet decided the extent of an employer's obligation under the statute. Therefore, this Court is must apply the rule that it believes that court would adopt under the circumstances. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 663 n. 10 (9th Cir. 1998).

The California court of appeal has recently held that "while employers cannot impede, discourage or dissuade employees from taking rest periods, they need only provide, not ensure, rest periods are taken." Brinker, 2008 WL 2806613 at 1 & 14-16 (interpreting 8 Cal. Code Regs. § 11050 (12)(A), which contains language identical to that of section 11070).

The Employees rely on Cicairos for the proposition that employers have an obligation to ensure that employees take rest breaks. (Reply Br. p. 13; Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 962-63 (Ct. App. 2005).) The Court does not read Cicairos to so hold. Rather, Cicairos held on summary judgment that "the defendant could . . . be liable if the plaintiffs did not take their full 10-minute rest breaks because, as a practical matter, the defendant did not *permit* the plaintiffs to take their rest breaks." Cicairos, 133 Cal. app. 4th at 963.

The Court finds that the state supreme court would likely adopt Brinker's interpretation of the regulation on rest breaks. The statutory language "authorize and permit" unambiguously direct employers to make rest breaks available, but does not indicate that they must force employees to take those breaks. See, White, 497 F. Supp. 2d at 1085-86.[2]

---

[2] The Employees urge the Court to decline to follow Brinker because the decision is not yet final. (Pltf's Supp. Br. p. 1.) While it is true that the supreme court may revise or overturn the case, the Court does not view that eventuality as sufficient basis to set its persuasive authority aside.

The general admonition to construe remedial wage and hour statutes "liberally" in favor of employees is not sufficient to persuade the Court to depart from this clear statutory language. (Contrast Reply Br. p. 14.)

Given that employers need only provide rest breaks, where the evidence does not show, on a class wide basis, "whether members of the proposed class . . . missed rest breaks as a result of a supervisor's coercion or the employees uncoerced choice to waive such breaks and continue working," individual issues regarding the reasons for the missed breaks predominate and class certification is inappropriate. Id. at 15; see also, Brown v. Federal Express Corp., 2008 U.S. Dist. LEXIS 17125, 18-21 (C.D. Cal. 2008).

Here, the Employees admit that GNC's time sheets do not document whether or not rest periods were taken and that "up to December 2007, rest periods were not recorded."[3] (Spencer Decl. ¶ 6.) Rather, they contend that GNC's policies effectively prohibited them from taking their rest breaks. (Reply Br. p. 20.)

First, they note that, through January 20, 2008, GNC had a policy that prohibited employees from leaving a store unattended or closing a store during hours of operation. (Opening Br. p. 4.) Given that policy, the Employees suggest that "rest period violations" can be ascertained from the time sheets by determining when an Employee was the sole person on duty in a particular store for four consecutive hours and inferring that they did not take a break during that time. (Id. ¶ 7; Reply Br. p. 6.) The Employees dub this scenario a "single coverage violation." (Reply Br. p. 6.)

At oral hearing, the Employees requested that the Court certify a subclass of employees who suffered single coverage violations. The Court declines to entertain this request for two reasons.

First, the Employees' application of the single coverage theory is flawed, since "[i]t is only when an employee is scheduled for a shift that is more than three and one-

---

[3] Although GNC has evidently begun implementing a new system to record rest breaks, that system is not yet fully operational in all GNC stores. (Sur-reply Br. pp. 18-19.) Contrary to the Employees' allegation, GNC did produce some available rest break data to the Employees. (Compare Reply Br. pp. 7-8 with Sur-reply Br. p. 19 and Prichard Decl. ¶ 3 and Exhs. B, C.) The Employees do not provide the Court with any analysis of that data, however.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-875 JVS (AGRx).                    Date  August 14, 2008

Title     Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

half hours, but less than four hours, that he or she is entitled to a rest break before the four hour mark." Brinker, 2008 WL 2806613 at 11. This is because "rest breaks need be afforded in the middle of [a] four-hour period only when 'practicable'." Id. at 15. Therefore, the Employees cannot, as they claim to do, conclusively establish that "single coverage" forced an employee to miss a break merely because that period of single coverage lasted four hours. (Reply Br. p. 6.)

Second, even if the Employees' single coverage analysis did conclusively identify violations, they have not made a showing as to whether a subclass so defined would meet any of the Rule 23(a) requirements. The Court cannot ascertain on the present record how many employees would be members of a single coverage subclass, whether the putative class representatives are members of such a subclass or whether, if they are, their claims are typical of those of the members of the subclass in general. Accordingly, the Court finds that certification of a subclass is unsupported by the record and therefore inappropriate.

The Employees identify a second policy that they contend resulted in classwide violations, viz. GNC's policy that "lunch periods and breaks are not strictly scheduled and will vary depending on customer volume and other factors." (Opening Br. p. 3, Ex. 4.) The policy also notes that "[employees] are expected to be flexible and to cooperate with . . . supervisor[s] in taking lunch periods and breaks at a time when there will be the least interference with business." (Id.)

The Employees claim that this policy, in conjunction with "the sheer number" of violations that they have identified, permits an inference that the Employees did not miss the breaks voluntarily and that GNC's policies caused them to miss their breaks. (Reply Br. pp. 20, 22.) In this regard, they contend that they "do not have to account for and present evidence of the reasons why each meal or rest break was missed, taken late or taken short[, rather] [t]hey simply have to show a pattern of violations that would allow the jury to infer a class wide policy of denying meal and rest breaks." (Reply Br. p. 22.)

The Employees' position is legally incorrect. They do have to present evidence of the reasons why they missed their rest breaks in order to establish GNC's liability. See Brinker, 2008 WL 2806613 at 15. Since the law only requires GNC to make rest breaks available to the Employees, in order to demonstrate that certification of their claim is proper, the Employees must show that they can prove by common methods on a class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                              Date   August 14, 2008

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

wide basis that GNC's policies effectively prohibited them from taking breaks. They have not provided any class wide evidence that precludes the possibility that some Employees took rest breaks, and some Employees voluntarily declined to take their rest breaks, at least some of the time.

In fact, GNC provides evidence that Employees did take rest breaks. (Fernandez Decl. ¶ 7; Gwin Decl. ¶ 7; Smith Decl. ¶¶ 6-8; So Decl. ¶ 6; Stoneking Decl. ¶¶ 6-8.) Goodell also testified that he took rest breaks. (Goodell Depo. p. 61:9-17.) In those instances, GNC's policies did not prevent those employees from doing so. Further, the evidence demonstrates that not all missed rest breaks are attributable to GNC's policies. For instance, one Employee states in her declaration that she sometimes voluntarily chooses not to take a ten-minute break. (Stoneking Decl. ¶ 7.)

Therefore, the Court concludes that the facts of this case are on all fours with those of Brinker and that "[t]he question of whether employees were forced to forgo rest breaks or voluntarily chose not to take them is a highly individualized inquiry." Brinker, 2008 WL 2806613 at 15. Whether or not the Employees actually missed their rest breaks, and if they missed breaks, whether it was because GNC did not permit them to take breaks, are inherently individual questions of fact. The individual questions clearly predominate over common questions so that class certification under Rule 23(b)(3) is inappropriate.

Accordingly, the Court denies certification of the Employees' rest break claims.

       c)      Meal Breaks

California Labor Code section 512 provides that:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

Cal. Labor Code § 512(a).

As in case of rest breaks, the Labor Code entitles an employee to one hour of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                           Date   August 14, 2008

Title     Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

wages for each day that a meal period is not provided. Cal. Labor Code § 226.7(a).

Here, too, the Employees argue that GNC's polices effectively prevented them from taking the meal breaks to which they were entitled. (Opening Br. pp. 17-18.) They advance the same "single coverage" theory described in connection with their claim for missed rest breaks, above. (See, e.g., Opening Br. p. 4.) The Employees also allege that the policy articulated in GNC's employee handbook requiring employees to "be flexible" with regard to when they take their meal breaks resulted in meal break violations. (Id. p. 3.)

The Employees identify three types of "meal period violations" from GNC's time sheets: 1) meal periods not taken until more than five hours of an Employees' shift had elapsed (late breaks); 2) meal periods of less than 30 consecutive minutes (short breaks); and 3) meal periods not taken at all (missed breaks). (Reply Br. p. 5.) The Employees do not provide a breakdown of violations by category, but they do isolate those violations they attribute to "single coverage." (Reply Br. p. 10.)

First, it is important to note that the Employees incorrectly identify late breaks as violations. Brinker expressly held that "an employer in California has a statutory duty to make a first 30-minute meal period available to an hourly employee who is permitted to work more than five hours *per day*." Brinker, 2008 WL 2806613 at 17. The entitlement to a meal break is based on the number of hours worked per day, not the number of hours worked consecutively. Id. at 1 ("employers are not required to provide a meal period for every five consecutive hours worked"). Thus, the court of appeal rejected the notion that "early lunching," the practice of requiring employees to take lunch breaks early in the day and thereafter work more than five hours without a meal break, is unlawful under the Labor Code. Id. at 17-19; see also, DLSE Memo, dated July 25, 2008 p. 2 (Sur-reply Br. Ex. 1). Correlatively, is it not unlawful to require an employee to work more than five hours before permitting him or her to take a lunch break.[4] Accordingly, to the extent the

---

[4] At oral hearing, the Employees contested this reading of Brinker and cited § 512(b) for the proposition that a meal break must be provided within the first five hours of a work day. Section 512(b) provides that "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees." Cal. Labor Code § 512(b). The parties did not brief the interpretation of this statutory provision, but on a plain reading of the language

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-875 JVS (AGRx).                                Date   August 14, 2008

Title     Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

Employees include late breaks in their tally of purported violations, those so-called violations identified are not violations at all. In particular, the Court notes that all of the purported violations described by Mr. Wilens in his declaration fall into this category. (Wilens Reply Decl. ¶ 3.) Since the Employees do not break down their analysis by type of violation, the Court cannot evaluate the proportion of late breaks that must be excluded from the total pool of violations. Nevertheless, the Court will evaluate the claim for the remaining missed and short breaks on the assumption that it is possible to isolate these types of violations from the data.

      Here, as with the rest break claim, the analysis of whether or not common issues predominate depends in part on the underlying legal issue of whether GNC is statutorily obligated to "ensure" that the Employees take their meal breaks, or merely to "provide" those breaks.

      Although the California Supreme Court has not specifically ruled on the issue, it has described the employee's statutory entitlement as the right "to be free of the employer's control during the meal period." Murphy v. Kenneth Cole Productions, Inc., 40 Cal 4th 1094, 1104 (2007). Thus, "an employee forced to forgo his or her meal period . . . has been deprived of th[at] right." Brown, 2008 U.S. Dist. LEXIS 17125 at 15 (quoting Murphy, 40 Cal. 4th at 1104.)

      Brinker clearly held that employers need only provide meal breaks, not ensure them. Brinker, 2008 WL 2806613 at 1, 16. District courts have similarly interpreted section 512 to mean that an employer is "required only to make meal breaks and rest breaks available to [employees]," and not to "force employees to take breaks." Brown, 2008 U.S. Dist. LEXIS at 18; see also, White v. Starbucks, Corp., 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007) (concluding "that the California Supreme Court, if faced with this issue, would require only that an employer *offer* meal breaks, without forcing

---

it suggests, at best, an implicit requirement under section 512(a) that meal periods commence prior to the lapse of the first six hours of an employee's shift. The statutory language does not support the Employees' proposed interpretation, viz. that the meal break must commence before the lapse of the first five hours of a shift. Accordingly, even if the Court were inclined to read the statute to prohibit lunches taken after the first six hours of a shift, notwithstanding Brinker, that conclusion would not change the result here, since the Employees' analysis, which is based on a five hour deadline, is over inclusive under the six-hour rule as well. (Spencer Reply Decl. ¶ 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 07-875 JVS (AGRx). Date August 14, 2008

Title Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

employers actively to ensure that workers are taking these breaks"); Kenny v. Supercuts, Inc., 2008 U.S. Dist. LEXIS 43073 at 15 (N.D. Cal. 2008) (concluding that "whatever 'fails to provide' in the Labor Code means, it does not require an employer to ensure that an employee take a meal break").

In addition to the support for this rule found in the plain language of the statute, both the state and federal courts have recognized certain policy justifications for it. Under the rule advocated by the Employees, "an employer with no reason to suspect that employees were missing breaks would have to find a way to force employees to take breaks or would have to pay an additional hour of pay every time an employee voluntarily chose to forego a break." White, 497 F. Supp. 2d at 1089. Thus, "in effect, the employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes, entitling them to compensation of one hour of pay for each violation." Id. See also, Brown, 2008 U.S. Dist. LEXIS at 16-17 (adopting White's policy analysis); Kenny, 2008 U.S. Dist. LEXIS at 9-11 (quoting White's and Brown's policy analyses); Brinker, 2008 WL 2806613 at 20-21 & 22 (relying on White's and Brown's policy analyses). Thus, a reading of the statute that requires employers to provide, but not to ensure, unpaid meal breaks protects employees' right to have the opportunity to take those breaks, as well as their right not to take them.

Here again, the Employees urge the court to follow Cicairos' "holding" that employers have a duty to ensure that employees take breaks. (See, e.g., Pltf's Supp. Br. p. 1.) The Court disagrees with the Employees' reading of that case. Cicairos simply found that the five individual plaintiffs in that case had presented evidence that the employer did not provide them with adequate meal breaks. Cicairos, 133 Cal. App. 4th at 962-63 ("the defendant have failed to establish it provided the plaintiffs with their required meal periods"). Accordingly, this Court agrees with its fellow district courts and the California court of appeal that "[i]n Cicairos . . . the court[] only decided meal breaks must be provided, not ensured." Brinker, 2008 WL 2806613 at 22; see also White v. Starbucks Corp., 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007); Brown, 2008 U.S. Dist. LEXIS 17125, 17-18 (C.D. Cal. 2008).

In light of the language of Murphy and the reasoning and holdings of Brinker, White, Brown, and Kenny, the Court concludes that the California Supreme Court would properly interpret the statute to require employers to provide meal breaks but not to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                    Date   August 14, 2008

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

ensure that employees take them.  See Wyler Summit P'ship, 135 F.3d at 663 n.10.

Given this background rule of law, the Court can evaluate whether common issues predominate among the Employees' meal break claims.  Common issues will predominate if the Employees can show, by common methods of proof, that GNC's policies "forced [them] to forego" their breaks on a class wide basis.  White, 497 F. Supp. 2d at 1089.

The Employees' theory that they missed meal breaks due to "single coverage" could provide such a common method.  Ideally, the theory's three premises would entail the conclusion that GNC's policies left the Employees with no choice but to miss those breaks:  First, GNC staffed stores so that there was only one employee working in a particular store at a particular time ("single coverage").  Second, GNC's policy prohibited employees from closing a store to take a meal break during their shift.  Third, GNC's employee time records evidence that a single employee was on duty alone for their entire shift, which was more than six hours.  Under these circumstances, the Court could conclude that GNC's policy effectively prohibited the employee from taking a meal break.  (See, Miller Decl. ¶ 10(a).)

At oral hearing, the Employees requested that the Court consider certifying a subclass of employees who suffered meal break violations that meet the single coverage model.  The Court declines this invitation for the reasons discussed in connection with the proposed subclass for the rest break claim, above.  In particular, the Court notes that the Employees do not make any showing as to whether the subclass would meet any of the mandatory requirements of Rule 23(a).

Moreover, even if the Court were to consider a single coverage subclass, the Employees' single coverage theory does not conclusively identify violations.  Since the Employees' analysis identifies violations based on the observation that an employee worked the first five hours of his or her shift without commencing a meal break, it is over inclusive for the reasons described at note 4 and accompanying text, supra.  (Spencer Reply Decl. ¶ 8.)  Accordingly, since not all of the purported violations identified by the Employees as attributable to "single coverage" scenarios are actual violations, certification of a subclass based on this data would be inappropriate.

Additionally, the Court finds that the "single coverage" theory and application to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-875 JVS (AGRx).                          Date  August 14, 2008

Title  Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

GNC's time records does not provide a common method of proof of class wide violations. The time sheets will only serve as a common method of proof of liability "only if defendants' liability for the additional hour of pay is established simply because the employee did not clock in and out for a full 30-minute meal break." Kenny v. Supercuts, Inc., 2008 U.S. Dist. LEXIS 43073 at 8 (N.D. Cal. 2008). Since GNC's liability is not conclusively established in each instance of a "single coverage" violation identified by the Employees, they are incorrect to conclude that their analysis shows violations to be a "classwide phenomenon." (Reply Br. p. 16.)

The Employees cite Alba v. Papa John's USA, Inc., 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007), for the proposition that "[w]here liability will depend upon resolution of a factual question regarding the existence and nature of a company policy or policies, this is a question that can be resolved on a classwide basis."[5] (Reply Br. p. 19.) The Court agrees. However, liability here does not depend on the resolution of a question regarding the existence of a company policy. Rather, it depends on resolution of the question as to whether the company policy caused the Employees to miss their meal breaks.

This is in part due to the fact that the Employees do not rely solely, or even principally, on their "single coverage" theory to account for the meal break violations they identify. Rather, they also attribute most of the missed meal periods they identify to "staffing levels," "working conditions," and "store conditions." (Reply Br. p. 19; Opening Br. p. 12.) By the Employees' own account only 10-14% of the purported violations[6] discerned from the time sheets produced by GNC are attributable to the "single coverage" theory. (Reply Br. p. 10; Miller Decl. ¶¶ 4, 6-11.) The Employees

---

[5] In Papa John's, the court certified a class's misclassification claim based on the finding that "standardized policies and practices" emanating from the corporation determined managers' job duties and rendered the question of whether they were properly classified one common to the class. Papa John's USA, Inc., 2007 U.S. Dist. LEXIS 28079 at 33-34, 40. Papa John's is thus entirely inapposite here, therefore, since the policy identified by the Employees as the cause of the missed meal breaks is not necessarily responsible for all of the violations. See, discussion infra. Therefore, liability depends on the individual circumstances surrounding a particular missed break and whether GNC's policy prevented the Employee from taking it.

[6] The Court notes that, as described above, since the Employees' tallies of violations include late breaks, they are inaccurate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   SACV 07-875 JVS (AGRx).                    Date   August 14, 2008

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

have not proposed a method of class wide proof to show that the other 86-90% of missed meal breaks constituted statutory violations.

In fact, the Employees' own evidence demonstrates that inquiry into the individual circumstances surrounding any particular missed meal break is required in order to conclusively establish liability. For instance, in his deposition, Goodell admitted that he sometimes voluntarily worked through his lunch break and left work a half hour early. (Goodell Depo. p. 62:8-14.) GNC provides similar evidence that demonstrates that some of the missed meal breaks shown by the time records are not violations because the Employees voluntarily missed them. For example, Marie Gwin ("Gwin") states that she worked through her meal break "on occasion" in order to leave work early. (Gwin Decl. ¶ 8.)

Since GNC is only liable for missed meal breaks that they forced the Employees to forego, the reason that any particular Employee missed any particular break unavoidably requires individualized fact finding. Brown, 2008 U.S. Dist. LEXIS 17125 at 21. Whether or not "store conditions" and "customer flow" forced the Employees to miss their meal breaks "requires an individual inquiry into each store, each shift, each employee." Kenny, 2008 U.S. Dist. LEXIS 439073 at 16 (N.D. Cal. 2008). The fact that the time records show, as Employees admit, that some Employees never missed a meal break, suggests that "'the availability' of meal breaks varied employee to employee, or at least store to store or manager to manager." Id. at 17; see Miller Decl. ¶¶ 7(c), 8(c), 9(b), 10(c), 11(c). This variation underscores the individualized nature of the determination of GNC's liability.

Finally, the Court declines to infer that GNC's policies prevented the Employees from taking their breaks on a class wide basis from the mere fact that the time sheets show many missed breaks. (Contrast Pltf. Supp. Br. p. 4.) First of all, the Court can not ascertain how many of the "violations" identified by the Employees are violations in fact. Second, the Employees can not meet their burden to prove that the violations can be adjudicated on a class wide basis by asserting that the sheer "rate of meal period violations is conclusive evidence that these breaks were missed or taken late due to GNC's policy that breaks could only be taken when they would cause the least interference with business." (Id. p. 5.) The fact that a single meal break is not documented by the time records is by no means conclusive proof that it was missed in violation of the statute. The same applies no matter how many missed breaks the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   SACV 07-875 JVS (AGRx).                                    Date   August 14, 2008

Title      Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

Employees have identified in the time records.

Notwithstanding the foregoing, the Court notes that the evidence proffered by the Employees may well demonstrate that GNC violated its statutory obligation to provide its employees with meal breaks in some instances and the theories they present may well entitle them to recovery in those instances. The question of GNC's ultimate liability is not before the Court at this time, however. Rather, the only question to be decided here is whether these theories of recovery involve predominantly common issues so that they can be adjudicated on a class wide basis. It is the Court's view that they do not. Rather, each Employee's entitlement to recovery depends to a certain extent on that Employee's successful showing on factual questions particular to that class member's failure to take a meal break, including the reasons for that failure.

For these reasons, the Court finds that, on the record presented by the Employees, individual differences between the putative class members' entitlements to recovery predominate over the common questions of law and fact that form the basis of their meal break claims. Accordingly, the Court denies the Employee's motion to certify this claim.

The fatal thread running through each of the Employees' claims is that liability will turn on individualized facts. The situation is not saved by the rubric that variations in damages sustained by class members will not defeat class certification. See, Blackie, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment"); see also, McLaughlin v. Seto, 850 F.2d 586, 589 (9th Cir. 1988) (noting that damages can be determined by representative evidence). Here, the individualized facts go far beyond damages, and this bars class certification.

      B.    Superiority

Next, the Court must consider if the class is superior to individual suits. Amchem, 521 U.S. at 615. "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                                    Date   August 14, 2008

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

This class action would be unmanageable given the predominance of the individual issues necessary to establish GNC's liability under each of the Employees' claims. The Court agrees that, for example, "the resources that would be expended on determining the reason for missed breaks would exceed those saved by classwide determination of the number of breaks missed." Brown, 2008 U.S. Dist. LEXIS 17125 at 22.

> Without a viable method of common proof for evaluating the ability of [4,000] class members to take breaks as required by law, the Court will be mired in [4,000] mini-trials regarding [the reasons class members missed their breaks]. The difficulties in managing such a wide-ranging factual inquiry persuade the Court that class treatment is not a superior method for resolution of the class members' potential claims.

Id. at 24; see also Brinker, 2008 WL 2806613 at 23 (quoting Brown at length).

The same reasoning applies to the Employees' off-the-clock claim, given the individual issues that must be adjudicated in order to establish liability for unpaid wages.

Because the adjudication of the Employees' claims on a class wide basis would, in essence, amount to the adjudication of each of their claims on an individual basis, the Court finds that the class action would be unmanageable. The Employees' will not benefit from any economies of scale, so that the alternative – separate actions – will be no more costly to them. See, Brown, 2008 U.S. Dist. LEXIS 17125 at 24.

Accordingly, the Court finds that class treatment is not superior to individual suits as a means to adjudicate this dispute.

III.   Conclusion

For the aforementioned reasons, the Court denies the Employees' motion for class certification.

_____00_____:___00_____

Initials of Preparer   kjt