UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

Present: The Honorable   James V. Selna

| | |
|---|---|
| S. Mikhail for Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                           Not Present

**Proceedings:**   (IN CHAMBERS) Order re Motion for Summary Judgment

Defendant General Nutrition Centers, Inc. ("GNC") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Plaintiffs Kristin Casarez ("Casarez") and Tyler Goodell ("Goodell") (collectively, "Plaintiffs") oppose. The motion is GRANTED IN PART AND DENIED IN PART, as set forth below.

I.    Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (citation omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
|---|---|---|---|

| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. |
|---|---|

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986) (internal quotations and citation omitted). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987).

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

II. Discussion

This is an individual action for violations of California labor laws related to overtime compensation, meal and rest breaks, and proper itemization and payment of wages upon termination. The amended complaint includes nine claims against GNC for: (1) failure to pay wages; (2) unfair business practices under the Unfair Practices Act ("UPA"), Cal. Bus. & Prof. Code § 17000 et seq.; (3) common-law conversion; (4) failure to provide meal periods; (5) failure to provide rest periods; (6) unfair competition under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (7) failure to provide accurate wage statements; (8) failure to pay all wages owed upon termination of employment; and (9) violation of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 & 2699.

GNC moves for full or partial summary judgment on these claims. The Court will address each claim in turn, starting with the first, fourth and fifth claims, from which the other claims arise.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 07-875 JVS (AGRx).    Date  April 28, 2009

Title  Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

    A.    First Claim: Failure to Pay Wages

The first claim alleges that GNC failed to pay Plaintiffs "off the clock" overtime compensation, "split shift" compensation, and "reporting time" pay to which they were entitled, in violation of California Labor Code sections 1194 and 1198. (FAC ¶ 11-22.)

    1.    Off the Clock

Plaintiffs allege that GNC did not pay them overtime for bank deposits made after hours, and for off-duty, work-related telephone calls. (SOF ¶¶ 25-41, 42-47.) To prevail on this claim, Plaintiffs must prove that GNC had actual or constructive knowledge of their alleged "off the clock" work. White v. Starbucks Corp., 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) (citation omitted). GNC contends that there is no genuine issue here. The Court agrees.

First, there is no genuine issue as to the bank deposit time. GNC offers evidence that Plaintiffs reported this time by adding 30 to 45 minutes to their "clock out time" for duties ancillary to closing the store for the night, including making bank deposits. (SOF ¶ 37-38.) Plaintiffs offer no evidence that they ever told GNC that they were not reporting all of their bank deposit time. (Id. ¶ 48.) They also concede that since bank deposits were made after store operating hours, no one at GNC would have known that Plaintiffs did not report all of the time it took them to make those deposits. (Id. ¶ 39-41). The mere assertion that "GNC received bank deposit records which showed when employees were making bank deposits 'after hours'" is unavailing. (Oppo. at 17, citing PSUF ¶ 21.) It is telling that Plaintiff's citation here includes no evidence from the record, and contradicts their own prior testimony that the bank deposit was a simple drop box with no record to show what time the deposit was made. (Casarez Depo. at 86:2-23, Supp. Goodell Depo. at 199:8-11.)

Second, there is no genuine issue as to time spent taking off-duty, work-related telephone calls. GNC offers undisputed evidence that GNC never instructed Plaintiffs not to report this time as work time, and that Plaintiffs were able to report this time. (SOF ¶¶ 43-44, 46.) This evidence suggests that GNC did not have actual or constructive notice of this alleged "off the clock" work. In response, Plaintiffs contend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

that, because "GNC required the plaintiffs to leave their phone numbers in the store and their supervisors called them on their days off, GNC had constructive notice that the plaintiffs were receiving off duty phone calls [and] knew these off-duty phone calls were not reflected on the time records." (Oppo. at 18, citing PSUF ¶ 25.) This a non sequitur: It does not follow that GNC knew that this time was going unreported simply because it had reason to believe that Plaintiffs were occasionally receiving off-duty, work-related telephone calls. Plaintiffs therefore do not identify a genuine issue for trial. At most, Plaintiffs' evidence shows that GNC knew or should have known that Plaintiffs occasionally took off-duty, work-related telephone calls. But there is no evidence to show that GNC knew or should have known that Plaintiffs took these calls without later reporting such time as hours worked, or that such calls were anything other than de minimis. (SOF ¶¶ 43-47; Casarez Depo. at 34:22-35:7; Goodell Depo. at 24:7-15, 29:1-6, 29:11-17.)

Moreover, Plaintiffs do not dispute that GNC's official policy required them to report all hours worked. (Id. ¶¶ 17-22.) Instead, Plaintiffs allege that they "were instructed by their supervisors not to report any overtime hours if they worked overtime." (Oppo. at 17, citing PSUF ¶ 19.) But the cited evidence (PSUF ¶ 18) does not support this allegation. The Katz Deposition merely confirms that Plaintiffs were instructed to stay within their clerical hours budget, and that regional sales directors would periodically review their schedules; it does not suggest that Plaintiffs were instructed to work "off the clock." (See id.) At best, the evidence shows that Plaintiffs were encouraged to keep overtime to a minimum, and that they could be terminated for the unauthorized use of overtime. (See id.) Significantly, both Casarez and Goodell testified that they were authorized to budget additional time for making bank deposits, and taking off-duty, work-related telephone calls. (SOF ¶¶ 37-38, 43-44.)

Plaintiffs also allege that, if they worked overtime, "they were severally [sic] reprimanded and yelled at by their supervisors and threatened with firing." (Oppo. at 17, citing PSUF ¶ 19.) Although there is some deposition testimony from the Plaintiffs to this effect, there is no substantial evidence to suggest that Plaintiffs were in fact instructed to work "off the clock." Casarez did testify that Steve Love, a regional sales director, told her that other managers reported 8 hours each day, even if they worked 8.5 hours one day and 7.5 hours the next. (Casarez Depo. at 61:9-13, 62:1-5.) But Casarez also testified that Mr. Love was her director "at the beginning of [her] career," well before the time relevant to this action. (Id. at 57:3-8, 59:15-17.) Moreover,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                                  Date   April 28, 2009

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

Plaintiffs do not allege that they ever reported time worked in one day as time worked on a different day during the relevant time period. Therefore, their overtime claims are limited to "off the clock" time spent making bank deposit and taking off-duty, work-related telephone calls; allegations about what Mr. Love said about how other managers reported their hours are immaterial. (SOF ¶ 55.)

The deposition testimony does not suggest that any other regional sales directors pressured Plaintiffs to work "off the clock." Casarez testified that she simply needed to explain her overtime hours to her director, and that her director would counsel Casarez to take steps to reduce overtime if she incurred significant overtime hours. (Casarez Depo. at 29:18-31:17.) In fact, Casarez testified that her directors[1] never instructed her to inaccurately report her hours worked. (Id. at 167:12-168:22.) Although Goodell testified that he sometimes felt pressured to work "off the clock," he did not testify that any director ever instructed him to do so. (Goodell Depo. at 12:3-10.) Similarly, although Goodell testified that his directors "threatened" him not to work overtime, he continued to work and report more than 8 hours per day even after being counseled to avoid unnecessary overtime. (Id. at 127:21-128:25, 236:7-13.)

Accordingly, the Court grants summary judgment for GNC on the "off the clock" overtime claim.

      2.    <u>Split Shift</u>

Plaintiffs allege that they each "suffered at least approximately 2 split shifts per month throughout employment." (SOF ¶ 64.) When an employee works a split shift,[2] the employer must pay the employee the minimum wage for that workday, plus one hour's pay at the minimum wage. Cal. Code Regs. tit. 8, § 11070(4)(C).

In their opposition, Plaintiffs do not dispute that GNC is entitled to summary

---

[1] Aside from Mr. Love, presumably.

[2] A work schedule that is interrupted by non-paid, non-working periods established by the employer, other than bona fide rest or meal periods. Cal. Code Regs. tit. 8, § 11070(2)(M).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

judgment on this "split shift" claim. Of the genuine issues pertaining to this claim in GNC's separate statement (SOF ¶¶ 64-67), Plaintiffs only dispute paragraph 65 on the grounds that GNC "cites no supporting evidence" for the following claim: "Since Plaintiffs were responsible for their own schedules, GNC could not have established a schedule for them in which they were scheduled to be interrupted by non-paid non-working periods established by GNC (other than bona fide meal or rest periods)." (PSUF ¶ 65.) But Plaintiffs are mistaken. To the extent that GNC's separate statement includes evidence for this claim (SOF ¶¶ 58, 60),[3] and to the extent that Plaintiffs do not controvert it by declaration or other written evidence, the Court must credit this claim. L.R. 56-3. Notwithstanding Plaintiffs' assertion that "many variables including inadequate supporting manpower" are at issue here (PSUF ¶ 65), they have not met their burden to rebut GNC's showing with evidence sufficient to preserve a genuine issue for trial.

Accordingly, the Court grants summary judgement for GNC on the "split shift" claim.

### 3. Reporting Time

Plaintiffs allege that they each "suffered approximately two or more reporting time violations per month throughout employment." (SOF ¶ 56.) GNC contends that there is no evidence that Plaintiffs were required to report for work and did report, but were not put to work or were furnished less than half their usual scheduled day's work, Cal. Code Regs. tit. 8, § 11070(5)(A); or that Plaintiffs were required to report for work a second time in any one workday and were furnished less than two hours of work on the second reporting, id. § 11070(5)(B). In any event, GNC asserts, the circumstances under which Plaintiffs reported to work were entirely within their

---

[3] Plaintiffs dispute paragraphs 58 and 60 by asserting that their ability to schedule their own hours were limited, inter alia, by certain parameters (PSUF ¶¶ 58, 60): "they were supposed to schedule themselves to work 40 hours per week, to close the store two nights per week, and to be off work on Sundays and Wednesdays" (SOF ¶ 61). The Court does not find these parameters to be material limitations on Plaintiffs ability to set their own schedules. Aside from these parameters, and the clerical hours budget, "Plaintiffs could fill out their schedules however they wished." (SOF ¶ 61.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

control. (SOF ¶ 61.)

Once again, Plaintiffs do not dispute in their opposition that GNC is entitled to summary judgment on this "reporting time" claim. However, related to the discussion above, Plaintiffs dispute paragraph 61 of GNC's separate statement on the grounds that their ability to schedule their own hours was also restricted by a clerical hours budget. (PSUF ¶ 61.) But they offer no evidence as to the budgeted number of clerical hours. Nor do they demonstrate how this budget effectively caused their "split shift" and "reporting time" claims. Plaintiffs must provide a more substantial evidence before such violations may be reasonably inferred. Richards, 602 F. Supp. at 1244-45. Their failure to do so is fatal here, particularly where GNC has offered evidence that the clerical hours budget was generally sufficient, albeit perhaps not sufficient to avoid single coverage, as discussed below. (Wunschel Decl. ¶¶ 18-19.)

Accordingly, the Court grants summary judgment for GNC on the "reporting time" claim and, therefore, on the first claim in its entirety.[4]

B.  <u>Fourth and Fifth Claims: Failure to Provide Meal and Rest Breaks</u>

The fourth and fifth claims allege that GNC failed to provide Plaintiffs with all of the meal and rest periods, respectively, to which they were entitled under California law. (FAC ¶¶ 46-56, 57-67.) California Labor Code section 512 provides for meal breaks:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

---

[4] Plaintiffs do not dispute that they did not assert a claim for mileage reimbursement in the amended complaint. (PSUF ¶ 105.) Accordingly, there is no need to address the claim here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

Cal. Labor Code § 512(a). Similarly, the California Code of Regulations provides for rest breaks:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

Cal. Code Regs. tit. 8, § 11070(12)(A). California law further provides that, if an employer fails to provide a meal or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7(a).

     GNC contends that there is no genuine issue on Plaintiffs' meal and rest period claims. The Court disagrees, noting at the outset that Plaintiffs offer evidence of meal period violations, meal period violations due to single coverage, and rest period violations due to single coverage. (PSUF ¶¶ 4-5.) As set forth in the Miller Declaration, Plaintiffs analyzed time punch records over the relevant time periods, noting where meal breaks were either missed, late, or short, and where meal and rest period violations occurred due to single coverage.[5] (Miller Decl. ¶ 5-8.) The results

---

[5] In pertinent part, the Miller Declaration provides:

> Where I found that either plaintiff worked alone for a substantial consecutive number of hours during the time frame a meal or rest break was supposed to have been taken, I notated this as a violation due to single coverage. With respect to a rest period, a single coverage violation occurred if the employee was required to work alone for more than four hours. With respect to meal periods, a single coverage violation occurred if the employee was required to work alone for more than five hours, although I also checked to see if they worked alone for six or more hours.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

are as follows. From April 17, 2006 through August 3, 2006, there are alleged to be 24 meal period violations, 2 single coverage meal period violations, and 3 single coverage rest period violations for Casarez. (Id. ¶ 11.) From April 25, 2006 through December 20, 2007, there are alleged to be 284 meal period violations, 64 single coverage meal period violations, and 161 single coverage rest period violations for Goodell. (Id. ¶ 12.) From April 2006 through December 2007, there are alleged to be 60,307 meal period violations, 2,662 single coverage meal period violations, and 5,379 single coverage rest period violations. (Id. ¶¶ 13-14.) Finally, from December 2007 through December 2008, there are alleged to be 2,922 meal period violations, 463 single coverage meal period violations, and 1,218 single coverage rest period violations. (Id. ¶ 15.)

GNC challenges this evidence on a number of grounds. Notwithstanding these challenges, the Court finds that genuine issues remain as to Plaintiffs' meal and rest period claims, as set forth below.

GNC first contends that the above evidence relies on a faulty understanding of what constitutes a Labor Code violation. Since an employer need only provide meal and rest breaks but need not ensure that they are taken, White, 497 F. Supp. 2d at 1085-86, GNC faults Plaintiffs for assuming that a "meal period violation" occurs each time (1) no meal break was taken during a shift of at least five or six hours, (2) a meal break did not start until more than five or six hours after the shift began, or (3) a meal break did not last 30 minutes. (Reply at 4-5, citing Miller Decl. ¶ 7.) Similarly, GNC faults Plaintiffs for assuming that a "rest period violation" occurs whenever "the employee was required to work alone for more than four hours." (Id. at 5, citing Miller Decl. ¶ 8.) Thus, the argument is that Plaintiffs cannot survive summary judgment because GNC was not required to force them to take meal and rest breaks, and they cannot show that GNC did not afford them the opportunity to take such breaks when alleged violations occurred. This is not the standard for summary judgment. To the extent Plaintiffs offer some evidence of meal and rest period violations, the Court

---

Miller Decl. ¶ 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

views that evidence in the light most favorable to Plaintiffs. The Court finds that there is a material issue of fact as to whether the alleged violations occurred not because employees chose not to take meal and rest breaks, but because they were unable to do so given the circumstances of their employment with GNC. To that end, there is evidence that Casarez and Goodell would have taken meal and rest breaks but for staffing issues and GNC policies. (See, e.g., Casarez Decl. ¶¶ 7-9; Goodell Decl. ¶¶ 7-9.)

At oral argument, GNC reiterated that the central issue was not whether Plaintiffs had missed meal and rest breaks, but whether they were afforded enough clerical hours to set schedules that would permit them to take such breaks. GNC cites the Wunschel Declaration as evidence that Plaintiffs had more than sufficient clerical hours, and in some cases, had enough hours to ensure double coverage at all times during store operation. However, even if double coverage was possible at all such times, it does not necessarily follow that Plaintiffs could always set schedules that would permit them to take meal and rest breaks. As a logical matter, the flow of customer traffic could be such that even two employees would be too busy for either one to realistically take a meal or rest break. In fact, Casarez specifically testifies that, "even when there was an opportunity to take a lunch break because there was someone to cover for me, on occasion I still could not take a lunch break because we were running a monthly promotion and the store traffic was too busy for one employee to handle." (Casarez Decl. ¶ 8.) Viewed in the light most favorable to Plaintiffs, Goodell gives similar testimony, claiming that "[t]he reason [he] was able to get so few or even no rest breaks was due to the low staffing levels." (Goodell Decl. ¶ 9.) As such, Plaintiffs have met their burden to rebut GNC's showing with at least some evidence to preserve a genuine issue for trial. The genuine issue is whether clerical hours where sufficient for Plaintiffs to set schedules that permitted them to take meal and rest breaks. The issue does not reduce to a question of law where Plaintiffs offer a factual predicate upon which the insufficiency of clerical hours may be inferred. Nor is the Court prepared to hold that no reasonable jury could find for Plaintiffs on these grounds.

GNC also takes issue with Plaintiffs' "single coverage" theory. According to GNC, the Wunschel Declaration establishes that staffing levels at the stores where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                    Date   April 28, 2009

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

Plaintiffs worked were more than sufficient for staffing overlap to ensure that meal and rest breaks were taken. (SOF ¶ 76.) But Plaintiffs submit countervailing evidence to suggest that staffing levels were insufficient to avoid single coverage.[6] (See, e.g., Casarez Depo. 121:19-122:13.) From this factual predicate, the Court may infer that staffing levels were such that single coverage meal and rest period violations did in fact occur. Anderson, 477 U.S. at 255. There is also evidence that up until January 20, 2008, GNC had a policy that employees could not leave the store unattended or close the store during hours of operation, and that this policy is still in effect for shopping malls, as opposed to strip malls. (PSUF ¶¶ 9-12.)

GNC also takes issue with Plaintiffs' "customer service" theory that GNC's Employee Handbook instructed employees that they may not be able to take breaks when desired "[d]ue to the unpredictability of customer flows," and indicated that employees were "expected to be flexible and . . . tak[e] lunch periods and breaks at a time when there will be the least interference with business." (PSUF ¶ 8.) While a provision for flexibility, without more, does not necessarily violate the Labor Code, this evidence nonetheless contributes to a factual predicate from which such violations may be inferred. Anderson, 477 U.S. at 255. Viewing the evidence in the light most favorable to Plaintiffs, this customer service policy may well have contributed to meal and rest period violations given the staffing issues discussed above.

GNC also contends that unexpected staffing issues, such as when employees called in sick, should not be treated as Labor Code violations. But this contention fails for the same reasons articulate above. Viewed in context, Plaintiffs allegation is that the customer service policy caused meal and rest period violations both "because the staffing levels at GNC stores in California were maintained so low, and because part time employees called in sick or otherwise did not report to work." (Oppo. at 5, citing PSUF ¶¶ 1-5.) Genuine issues remain as to the broader allegation that GNC created circumstances under which it was virtually impossible for Plaintiffs to take meal and

---

[6] The Court nonetheless finds this evidence too indirect to preserve genuine issues as to the "split shift" and "reporting time" claims. That Casarez complained about clerical hours, generally, does not show the likelihood of "split shift" and "reporting time" violations, where the connection is too tenuous, but it does support Plaintiffs' "single coverage" theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

rest breaks on a regular basis. Indeed, the conclusion in the Miller Declaration is that 73% and 85% of the time Casarez and Goodell worked more than six hours a day, respectively, they suffered meal period violations. (Miller Decl. ¶¶ 11, 12.)

To that end, GNC contends that Plaintiffs had signed voluntary "on duty" meal period agreements. Plaintiffs counter that such agreements are improper for shopping and strip malls, and asks the Court to take judicial notice of the Department of Industrial Relations website, which states as follows:

> An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the employer and employee an on-the-job paid meal period is agreed to. . . . An employer and employee may not agree to an on-duty meal period unless, based on objective criteria, any employee would be prevented from being relieved of all duty based on the necessary job duties. Some examples of jobs that fit this category are a sole worker in a coffee kiosk, a sole worker in an all-night convenience store, and a security guard stationed alone at a remote site.

http://www.dir.ca.gov/dlse/FAQ_MealPeriods.html (second and third emphases supplied) (citations omitted). Although this citation is not binding authority, the Court finds it persuasive. It is doubtful whether work in a store located in a shopping or strip mall meets the objective criteria of the above test. Such work may not be sufficiently analogous to the circumstances of a kiosk or convenience store worker, or a remotely-stationed security guard. GNC attempts to make this analogy, contending that the kiosk and convenience store could also hire more employees. But this reasoning would eviscerate the utility of the "nature of the work" limitation, which appears to restrict "on duty" meal periods to work that, as a matter of course, requires single coverage. However, the Court need not decide this issue here. Even if "on duty" meal periods were proper in this case, such meal periods must be paid, see Bono Enters., In. v. Bradshaw, 32 Cal. App. 4th 968, 979 (1995), disapproved on other grounds, Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal. 4th 557, 574 (1997), such that Plaintiffs would be entitled to "one additional hour of pay at [his or her] regular rate of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

compensation for each work day that the meal or rest period is not provided," Cal. Lab. Code § 226.7. Because there is evidence the GNC did not pay its employees, including Plaintiffs, an extra hour of pay for missed meal breaks (PSUF ¶ 15), the Court cannot grant summary judgment on this issue.

Finally, GNC contends that Plaintiffs have the burden to show a genuine issue as to each individual break they allegedly missed. This is incorrect as a matter of law, not only because it turns the summary judgment standard on its head, but also because the Court finds no support for this proposition in GNC's cited cases. As the moving party, GNC has the burden to show there is no genuine issue in the first instance. Only then does the burden to show a genuine issue shift to Plaintiffs. Here, even assuming that GNC carried its initial burden, genuine issues remain as to the various violations at issue in the Miller Declaration.

GNC attempts to show that the Court's previous order denying class certification shows that, to survive summary judgment as to each individual break allegedly missed, Plaintiffs must offer evidence that (1) the specific break was missed, and (2) GNC prevented him or her from taking that specific break. (Mot. at 11, citing Docket No. 49, at 7.) However, the Miller Declaration raises genuine issues, both as to whether specific breaks were missed, and, coupled with other evidence, whether GNC prevented Casarez and Goodell from taking those specific breaks. This is particularly so when the evidence is viewed in the light most favorable to Plaintiffs. Suffice it to say that Plaintiffs can meet this requirement for purposes of this motion. In any event, Plaintiffs distinguish GNC's cited cases. (Oppo. at 8-10.) Notably, GNC does not attempt to defend these cases in its reply papers.[7] (Reply at 8, citing Docket No. 68, at 12.) Moreover, to the extent GNC questions the reliability of Plaintiffs' evidence, alleging that the punch time records contain various omissions and do not account for all clerical hours (Reply at 9-10; Wunschel Decl. ¶¶ 18-19), the Court resolves any doubt in Plaintiffs' favor. Celotex, 477 U.S. at 323-24.

---

[7] The cases are as follows: Reeves v. Beardall, 316 U.S. 283 (1942); Merrill v. Stone, 996 F.2d 1216 (6th Cir. 1993); Edward Fineman Co. v. Super. Ct., 66 Cal. App. 4th 1110 (1998); Galante v. Cox, Civ., No. 05-06739, 2006 WL 1371191 (E.D. Pa. May 16, 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 07-875 JVS (AGRx).                                Date   April 28, 2009

Title   Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

      The Court notes the amendment to the Miller Declaration (Docket No. 77), and GNC's subsequent challenge to that amendment, and the declaration as a whole (Docket No. 78). Most of GNC's objections have been addressed above, but to the extent GNC contends that the Miller Declaration is inadmissible under the Federal Rules of Evidence, the Court is persuaded that it may yet be admitted under Rule 1006.[8] GNC relies on Paddack v. Dave Christensen, Inc., 745 F.2d 1254 (9th Cir. 1984), for the proposition that the Miller Declaration is inadmissible under Rule 1006 to the extent it does not "rest[] entirely upon admissible evidence," and the underlying documents lack a proper foundation. But this reliance is misplaced. The first citation to Paddack is limited to "such cases" where the summary report is "based in part on inadmissible hearsay." Id. at 1259. Even if the Miller Declaration must rest entirely on admissible evidence, it is not clear that any underlying documents are inadmissible. Once again, the Court resolves doubt in Plaintiffs' favor. The Court does same with respect to the second citation to Paddack, requiring that Plaintiffs establish a foundation that the evidence is admissible and was made available to GNC. Id. The Miller Declaration provides that its findings, as to Goodell, are based on original Excel spreadsheets provided by GNC, rather than the original Exhibit 2 to the declaration. Presumably, GNC still has the original Excel spreadsheets that it produced to Plaintiffs, and, moreover, Plaintiffs can make this evidence available before trial. In any event, Plaintiffs must still meet their burden of proof on this issue at trial.

      Accordingly, because genuine issues remain as to meal and rest period violations, summary judgment is inappropriate on these claims.

---

    [8] This rule provides as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
|---|---|---|---|
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

C. Second Claim: Violation of UPA

The second claim alleges that, by failing to pay overtime and to provide meal and rest breaks, GNC violated the UPA, Cal. Bus. & Prof. Code § 17000 et seq. (FAC ¶¶ 23-36.) But Plaintiffs now concede that GNC is entitled to summary judgment on their UPA claim. (Oppo. at 2; see also Mot. at 14-15.)

Accordingly, the Court grants summary judgment for GNC on this claim.

D. Third Claim: Conversion

The third claim alleges that, by failing to pay overtime and to provide meal and rest breaks, GNC tortiously converted the Plaintiffs' property. (FAC ¶¶ 37-45.) According to GNC, this merely recasts the statutory claims in the first, fourth and fifth claims as conversion in the third claim. GNC contends that the rights created by the Labor Code provide an exclusive statutory remedy for a violation of those rights, and that Plaintiffs are therefore limited to statutory remedies. The Court agrees.

As a general rule, "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." Rojo v. Kliger, 52 Cal. 3d 65, 79 (1990) (citations omitted); accord Green v. Party City Corp., No. CV-01-09681, 2002 WL 553219, at *4 (C.D. Cal. Apr. 9, 2002). While the Court finds no California cases on point, other federal courts have found that the Labor Code provides an exclusive statutory remedy. Thomas v. Home Depot USA Inc., 527 F. Supp. 2d 1003, 1010 (N.D. Cal. 2007); In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 618-19 (N.D. Cal. 2007). Therefore, a conversion claim based on Labor Code violations cannot stand given the statutory remedies available under the Labor Code. Thomas, 527 F. Supp. 2d at 1010 (N.D. Cal. 2007) (finding that a claim for conversion based on violations of the Labor Code was improper); Wal-Mart, 505 F. Supp. 2d at 619 (same).

Accordingly, the Court dismisses the conversion claim because it is improper as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

  E. <u>Sixth Claim: Violation of UCL</u>

  The sixth claims alleges that, by failing to pay overtime and to provide meal and rest breaks, GNC violated the UCL, Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> (FAC ¶¶ 68-80.) GNC contends that it is entitled to summary judgment on this claim to the same extent that summary judgment may be entered on the first, fourth and fifth claims. (Mot. at 12-13.) Plaintiffs agree. (Oppo. at 21.)

  Accordingly, the Court grants summary for GNC on the UCL claim to the extent it is based on the first claim for overtime, but does not grant summary judgment to the extent it is based on the fourth and fifth claims for meal and rest period violations.

  F. <u>Seventh Claim: Failure to Provide Accurate Wage Statements</u>

  The seventh claim alleges that GNC failed to furnish itemized wage statements in violation of Labor Code section 226 (FAC ¶¶ 81-84), which mandates that every employer shall, at the time of each payment of wages, furnish each of its employees an accurate itemized statement in writing. Plaintiffs specifically allege that statements did not accurately show the total hours worked during each pay period, and the hours worked at each hourly rate. Cal. Lab. Code § 226(a)(2), (9).

  GNC contends that its wage statements complied with section 226(a) and, in any event, that there is no evidence that Plaintiffs suffered "injury" or that any noncompliance was the "result of a knowing and intentional failure by [GNC] to comply." <u>Id.</u> § 226(e). There is no need for the Court to address all of these issues, since the Court has already found that no genuine issue exists as to Plaintiffs' overtime claim. To the extent Plaintiffs do not dispute that they were paid for all the overtime hours they reported (PSUF ¶ 24), no genuine issue remains as to this claim. Plaintiffs effectively concede that their wage statements accurately reflected all overtime that was reported, but attempt to shift ground by arguing that GNC "focuses its arguments on the unpaid overtime compensation that was not included in the itemized wage statements and ignores the unpaid meal and rest period compensation that was not included either." (Oppo. at 19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 07-875 JVS (AGRx). Date April 28, 2009

Title Kristin Casarez, et al. v. General Nutrition Centers Inc., et al.

The Court will not allow Plaintiffs to become a moving target. The amended complaint plainly limits the seventh claim to "off the clock" overtime. The seventh claim alleges that, as a result of wage statement deficiencies, Plaintiffs were lead to believe that they were not entitled to be paid overtime, and were "hindered" in their ability to determine the amount of overtime owed to them. (FAC ¶ 83.) Notably, Plaintiffs never complained that they were injured by GNC's failure to report earned but unpaid meal and rest period premiums on their wage statements. Thus, because GNC shows that there is no evidence that Plaintiffs suffered an actual injury, and because Plaintiffs offer no evidence to rebut this showing, summary judgment is appropriate here. See Elliot v. Spherion Pac. Work, LLC, 572 F. Supp. 2d 1169, 1180-81 (C.D. Cal. 2008).

Accordingly, the Court grants summary judgment for GNC on this claim.

G. Eighth Claim: Failure to Pay Wages Upon Termination

The eighth claim allege that GNC failed to pay Plaintiffs their wages upon the termination of their employment, thereby entitling them to "waiting time" penalties under Labor Code section 203. (FAC ¶¶ 85-88.)

GNC contends that it is entitled to summary judgment on this claim because the alleged failure to pay wages for overtime, as well as meal and rest breaks, was not willful. (Mot. at 17-18, citing Cal. Code Regs., tit. 8, § 13520.) Plaintiffs counter that the question of willfulness is, in part, a question of fact for the jury. Because GNC cites no evidence showing that there is no genuine issue on this question, and because the evidence before the Court with respect to meal and rest breaks may be viewed as some evidence of willfulness, albeit circumstantial, the Court resolves doubt in favor of Plaintiffs here. Celotex, 477 U.S. at 323-24.

Accordingly, the Court grants summary judgment for GNC on the "waiting time" claim to the extent it is based on the first claim for overtime, but does not grant summary judgment to the extent it is based on the fourth and fifth claims for meal and rest period violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

      H.     <u>Ninth Claim: Violation of PAGA</u>

     The ninth claim alleges that, pursuant to PAGA, Cal. Lab. Code §§ 2698 & 2699, Plaintiffs are authorized to recover civil penalties on behalf of themselves and 3,551 "aggrieved employees" who worked at GNC stores in California during the relevant time period. (FAC ¶¶ 89-100; SUF ¶¶ 96-98.) GNC contends that summary judgment is appropriate because Plaintiffs failed to exhaust mandatory administrative procedures before filing their PAGA claim, and because Plaintiffs cannot identify violations on behalf of themselves or any other "aggrieved" employees. Because the exhaustion issue is dispositive of this claim, the Court need not address other issues.

     Under subdivision (a) of section 2669.3, "[a] civil action by an aggrieved employee pursuant to . . . Section 2699 . . . <u>shall</u> commence <u>only</u> after" the employee gives written notice to the Labor and Workforce Development Agency ("LWDA") and the employer of the alleged violation, and receives notice from the LWDA that it does not intend to investigate the alleged violation. Cal. Lab. Code § 2699.3(a) (emphases supplied). GNC contends that the plain language of this statute, as well as its legislative history, preclude plaintiffs from bringing a PAGA claim unless they first exhaust these administrative procedures – and plead exhaustion in the complaint. Plaintiffs concede that they did not exhaust these administrative procedures before amending their complaint to add a PAGA claim seeking civil penalties. (Oppo. at 23-24.) Plaintiffs nonetheless rely on <u>Caliber Bodyworks, Inc. v. Superior Court</u>, 134 Cal. App. 4th 365, 376 n.18 (2005), for the proposition that the failure to plead exhaustion of these administrative procedures does not permit dismissal so long as there has been actual compliance. This reliance is unavailing, however, as set forth below.

     <u>Caliber Bodyworks</u> acknowledges, as dicta in a footnote, that plaintiffs may still comply with the administrative procedures in section 2699.3(a) even after their complaint has been dismissed for want of exhaustion, and that plaintiffs may still amend their complaint to plead compliance if the LWDA chooses not to investigate alleged violations. <u>Id.</u> In reaching this conclusion, the court in <u>Caliber Bodyworks</u> cites to subdivision (a)(2)(C) of section 2699.3: "Notwithstanding any other provision of law, a plaintiff may as a matter of right amend an existing complaint to add a cause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
|---|---|---|---|
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

of action arising under this part at any time within 60 days of the time periods specified in this part." Id. This provision allows amendment as of right within 60 days, but does not establish an absolute 60-day filing requirement. De Simas v. Big Lots Stores, Inc., No. C 06-6614 SI, 2007 WL 1840163, at *2 (N.D. Cal. Mar. 2, 2007). Such a requirement would run contrary to subdivision (d) of section 2699.3: "The periods specified in this section are not counted as part of the time limited [sic] for the commencement of the civil action to recover penalties under this part." Hence, the PAGA claim is not necessarily barred simply because it was brought more than 60 days after June 22, 2007, when the LWDA notified the parties that it did not intend to investigate the alleged violations. (SOF ¶ 101.)

However, the proper filing of this claim is not without limitation; PAGA claims are subject to a one-year statute of limitations. Thomas, 527 F. Supp. 2d at 1007. Because Plaintiffs' PAGA claim accrued, at the latest, in December 2007 when Goodell last worked for GNC (SOF ¶ 15),[9] and because Plaintiffs have yet to properly commence a PAGA civil action, the Court finds that Plaintiffs are time barred from seeking civil penalties pursuant to PAGA. See Caliber Bodyworks, Inc., 134 Cal. App. 4th at 382-84. The PAGA claim is not only procedurally defective, but Plaintiffs have also been on notice of this procedural defect since at least July 27, 2007, when GNC filed its answer asserting, inter alia, the affirmative defense that "Plaintiffs [had] failed to exhaust the notice and other administrative requirements set out in the [PAGA], including but not limited to sections 2699.3(a) and 2699.5." (Docket No. 1, Answer ¶ 26.)

At oral argument, Plaintiffs cited Goldman v. Wilsey Foods, Inc., 216 Cal. App. 3d 1085 (1989), for the proposition that the "relation back" doctrine could be used to bring an amended complaint within the limitations period for purposes of their PAGA

---

[9] Plaintiffs argue that if the Court applied a new one-year statute of limitations running from the present time, a brand new PAGA claim would still be timely because violations occurred "within the past nine months." (Oppo. at 25, citing PSUF ¶ 3.) But Plaintiffs resigned from GNC more than one year ago (SOF ¶¶ 10 & 15), and, therefore, Plaintiffs may not proceed in a representative capacity on behalf of other employees whose individual PAGA claims might be timely. Thomas, 527 F. Supp. 2d at 1009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 07-875 JVS (AGRx). | Date | April 28, 2009 |
| Title | Kristin Casarez, et al. v. General Nutrition Centers Inc., et al. | | |

claim. But even assuming that <u>Goldman</u> applies,[10] a motion to amend the complaint is not before the Court at this time. The Court finds that any attempt to make such an amendment would now be "too little, too late" at this juncture, particularly because Plaintiffs have been on notice of this defect in their complaint for nearly two years.

Accordingly, the Court dismisses the ninth claim with prejudice for civil penalties under PAGA.

III. <u>Conclusion</u>

For the foregoing reasons, the motion is GRANTED IN PART AND DENIED IN PART, as set forth above.

00:00

Initials of Preparer    sdm

---

[10] It is not clear that <u>Goldman</u> even applies, as that case did not concern the strict exhaustion requirements of PAGA, but rather was brought under the Fair Employment and Housing Act, Cal. Gov. Code, §§ 12940(a) & 12965.